IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Builders Mutual Insurance Company, | ) | Civil Action No. 4-07-3183-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **O R D E R** |
| vs. | ) | |
| | ) | |
| Wingard Properties, Inc. and Kenneth | ) | |
| Gwynn, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

In this action, Plaintiff Builders Mutual Insurance Company seeks a declaratory judgment that

a commercial general liability (CGL) policy which it issued to Defendant Wingard Properties, Inc. does

not provide coverage or a duty to defend in regard to certain alleged damages in an underlying state

court action. Before the Court are cross motions for summary judgment by Builders Mutual and

Wingard Properties and a joint motion to stay the mediation deadline.[1] Defendant Wingard Properties

filed a Response to Plaintiff's Motion for Summary Judgment in which it asked alternatively for the

Court to declare that the case is not ripe and dismiss the action subject to the right of Builder's Mutual

to refile after the underlying action is completed and damages have been assessed.

**Facts**

Wingard Properties was the general contractor for construction of a model home located at 1511

Serena Drive, Myrtle Beach, South Carolina (Lot 53, Grande Dunes, The Villages).  The home was

originally sold by Wingard to a Deane Morris, who subsequently leased it back to Wingard for use as

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion.
Unless so ordered, motions may be determined without a hearing."

a model home and for a sales office for a period of time. Morris then sold the home to defendant Gwynn

on or about December 21, 2006. The parties executed an escrow agreement with attached punch list

wherein Morris agreed to make about $35,000 in repairs. (*See* Exhibit B to Plaintiff's Memorandum,

Docket Entry # 67). Wingard agreed to make the repairs, apparently pursuant to the provisions of its

lease with Morris. (*See* ¶ 8 of Draft Complaint for state court action, Docket Entry #67-1, providing

"the home will be made back in like new condition and the builder's warranty along with all appliances

and components warranties shall be extended for one full year after lease and all extensions are

ended."). Gwynn later submitted another punch list to Wingard (Exhibit C to Plaintiff's Memorandum).

Wingard attempted to address this punch list[2], but Gwynn notified Wingard that it was not satisfied with

this work.  (Correspondence from DiSabato, Jr.to Tom Wingard dated July 18, 2007, Exhibit D).

Gwynn has initiated an action in state court against Wingard and Morris which is pending. The

Complaint alleges various defects in the home (¶ 10 of "draft" Complaint):

> Flooring-employees of Wingard Properties, Inc. placed acetone on the hard wood floors
> causing severe damage and requiring the floors to be stripped and refinished; Plumbing-
> the hot water heaters were not functioning on the premises and water pressure to the
> upstairs bathrooms was severely limited; Fountains- the fountains on the property did
> not run correctly and were not being repaired by service men from Wingard Properties;
> Vacuum system-the equipment was malfunctional causing Plaintiff to repair and replace
> the vacuum system in the home; Pool-the pool was incorrectly plumbed causing the
> pool to lose water regularly in addition to the fact that the installed waterfall was
> causing corrosion on the pool; Structural beams-the structural beams supporting the
> back sliding glass windows was bowed making it impossible for the sliders to operate
> properly; Windows-the frames and windows were severely scratched and damaged;
> Doors-the bedroom doors were severely warped and did not close properly and the
> exterior doors to the home were rusted; Carpet-Defendant "Wingard" placed runners
> throughout the home along the carpeting causing severe damage and taking the pattern

---

[2] Plaintiff contends that Wingard owes no contractual duty to Gwynn since it did not sell the house directly to him. (Docket Entry # 67, p.2). This argument is without merit. *See Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980) and *Smith v. Breedlove*, 377 S.C. 415, 661 S.E.2d 67 (Ct. App. 2008).

out of the carpet permanently.

**Policy Provisions**

Builders Mutual insured Wingard through CGL policy number CPP 0015855. (Exhibit E). The

policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of
"bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to
defend the insured against any "suit" seeking those damages. However, we will have no duty to defend
the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this
insurance does not apply. . . . .
**b.** This insurance applies to "bodily injury" and "property damage" only if:
**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the
"coverage territory";
**(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

* * *

**2. Exclusions**

This insurance does not apply to:

* * *

l. Damage To Your Work
**"**Property damage" to "your work" arising out of it or any part of it and included in the "products-
completed operations hazard". (Emphasis added).
This exclusion does not apply if the damaged work or the work out of which the damage arises was
performed on your behalf by a subcontractor. [This exception is removed by an endorsement as set forth
below]
* * *
**SECTION V – DEFINITIONS**
* * *
**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the
same general harmful conditions.
* * *
16. "Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent

3

and arising out of "your product" or "your work" except:
* * *
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

> (a) When all of the work called for in your contract has been completed. . .
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction,, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

**17.** "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .
* * *

**22. "Your work**":
**a.** Means:
**(1) Work or operations performed by you or on your behalf**; and
**(2)** Materials, parts or equipment furnished in connection with such work or operations.
b**.** Includes
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work". . .

> An endorsement (#CG 2294 (10/01)) modifies exclusion l. by replacing it with the following

language:

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**
* * *
**2. Exclusions**
This insurance does not apply to:
**l. Damage To Your Work**
**"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".** (Emphasis added).

**Legal Standard-Summary Judgment**

> Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

4

Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must

respond to the motion with "specific facts showing there is a genuine issue for trial. If the adverse party

does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy*

*v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the

evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." *Id*., quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**Declaratory Judgment Act**

The plaintiff asserts, and no defendant disputes, that the parties are citizens of different states

and the matter in controversy exceeds $75,000. Thus, this court has diversity jurisdiction pursuant to

28 U.S.C. § 1332. However, pursuant to the Federal Declaratory Judgment Act ("the Act"), 28 U.S.C.

§ 2201, and Fed.R.Civ.P. 57, federal courts have discretion to decline to exercise jurisdiction over a

declaratory judgment action. Specifically, the Act provides in part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United
> States, upon the filing of an appropriate pleading, *may* declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).

The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act

as 'an enabling Act, which confers a *discretion* on the courts rather than an absolute right upon the

litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (emphasis added) (quoting *Public Serv.*

*Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). This discretion is not boundless however, as a district court "may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination, but may do so only for good reason.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (citations omitted).[3]

In *Aetna Casualty & Surety Co. v. Quarles*, the Fourth Circuit found that 28 U.S.C. § 2201 gives district courts the discretionary authority to grant relief where it "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." 92 F.2d 321, 325 (4th Cir. 1937); *see also Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). After considering the *Quarles* factors enumerated above, many courts have used federal declaratory judgment actions "to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which the coverage is sought." *Nautilus*, 15 F.3d at 375 (citing *Stout v. Grain Dealers Mut. Ins. Co. v. Daniel*, 92 F.2d 838 (4th Cir. 1937)).

In the case before this court, Builders Mutual is seeking a declaration that it owes no duty to defend or indemnify under a CGL insurance policy issued to Wingard Properties. All parties acknowledge that there is a pending action in state court in which the insured, Wingard, is a defendant in a suit brought by Gwynn. As such, this court finds that by defining the duties of Builders Mutual to Wingard Properties, this declaratory judgment action could serve a useful purpose and that it would terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

---

[3] Although *Wilton* overruled portions of *Nautilus* dealing with appellate standards of review, the factors articulated by *Nautilus* with regard to whether or not a court should exercise discretion in a declaratory relief action remain useful. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).

proceeding to some extent.

> Yet, subsequent to the decision in *Quarles*, the Fourth Circuit has recognized that:

> when an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, even when the declaratory relief sought would serve a useful purpose.

*Nautilus*, 15 F.3d at 376 (citing *Mitcheson v. Harris*, 955 F.2d 235, 237-41 (4th Cir. 1992)).  However, the court in *Nautilus* stated that its decision in *Mitcheson* "did not announce a *per se* rule forbidding a federal court to entertain a declaratory action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in the state courts." *Id.*  The court found that "[s]uch a rule would, of course, be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." *Id.*

Instead, *Mitcheson* found that when a federal court is presented with an insurer's request for declaratory relief on coverage issues while there is pending related state court litigation, its discretion must not only be guided by the factors outlined in *Quarles*, but also by considerations of federalism, efficiency, and comity. *Nautilus*, 15 F.3d at 376.  These additional concerns require a court to consider:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law;" and (4) whether the declaratory judgment action is being used merely as a device for "procedural fencing"-- that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

Id. at 377 (internal citations omitted).

**Duty to Defend**

After considering these factors, the court finds that it should not abstain from deciding whether or not the plaintiff has a duty to defend the underlying lawsuit. Although South Carolina courts would have a strong interest in deciding the duty to defend issues because the policy was issued in South Carolina, South Carolina substantive law applies, and the policy covered a South Carolina corporation, the remaining factors weigh in favor of this Court exercising jurisdiction. The state court would not be able to more efficiently resolve the issue, where the action in this Court was filed several years ago and is ready for disposition. Federal courts are familiar with South Carolina law regarding the duty to defend, and this Court has been provided with the underlying complaint. Further, it does not appear that the plaintiff is merely engaging in procedural fencing or forum shopping, since Plaintiff is not even a party to the state court action and this Court has subject matter jurisdiction based on diversity of citizenship. Therefore, the Court finds that the relevant factors weigh in favor of exercising jurisdiction over the controversy regarding the duty to defend.

"If the facts alleged in the complaint raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend. If no such possibility is raised, no duty of defense is owed." *Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d 945, 949 (4th Cir. 1988). "Hence, whether a duty to defend exists is determined by comparing the allegations of the complaint to the terms of the policy." *Id*. At 949-50. "Moreover, an insurer has no duty to defend an insured where the damage was caused by a reason unambiguously excluded under the policy." *Federated Mutual Ins. Co. v. Piedmont Petroleum Corp*., 444 S.E.2d 532, 533 (S.C.Ct. App. 1994). However, "inclusion of some non-covered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy." *Isle of Palms Pest Control Co. v.*

8

*Monticello Ins. Co.*, 459 S.E.2d 318, 319 (S.C.Ct. App. 1994). It is well settled that the duty to defend

is broader than the duty to indemnify. *See Sloan Construction Co., Inc. v. Central National Insurance*

*Company of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977). In the case at bar, as explained below,

there is a reasonable possibility that there was an occurrence; that the "your work" exclusion may not

apply; and that the insured may be held liable for some act or omission covered by the policy.

Therefore, Builder's Mutual has a duty to defend the underlying lawsuit. However, factual issues must

be resolved before a determination can be made regarding the duty to indemnify and the applicability

of the "your work" exclusion.

### Duty to Indemnify

Applying the above factors, the Court finds it appropriate to issue a declaratory judgment in part

regarding the duty to indemnify in that the "your work" exclusion as defined in this insurance policy

includes the work of subcontractors. However, a final determination of the applicability of the "your

work" exclusion cannot be made until factual issues have been determined in the state court action. The

declaratory judgment action as it pertains to a duty to indemnify will be dismissed without prejudice

on the basis that the matter is not ripe. While "a federal district court should normally entertain a

declaratory judgment action within its jurisdiction," it is not prudent to do so when factual issues

require resolution before the parties rights under an insurance contract can be decided. *Nautilus*, 15

F.3d at 375.[4]

---

[4] Some South Carolina cases appear to hold that the allegations of the underlying complaint determine the obligations of a liability insurer, both as to the duty to defend and the duty to indemnify. *See Mfrs. & Merchs. Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 162, 498 S.E.2d 222, 227 (Ct. App. 1998). However, the Fourth Circuit has held, applying South Carolina law, that the duty to indemnify is based on evidence found by the factfinder. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co*., 275 F.3d 384, 387-88 (4th Cir. 2001), citing *Jourdan v. Boggs/Vaughn Contracting, Inc*., 324 S.C.309, 476 S.E.2d 708, 711 (1996).

***Occurrence.*** "A CGL policy in the home construction industry is designed to cover the risks

faced by homebuilders when a homeowner asserts a post-construction claim against the builder for

damage to the home caused by alleged construction defects." *Auto Owners Ins. Co. v. Newman*, 684

S.E.2d 541, 545 (S.C. 2009). It "'is not intended to insure business risks, *i.e.*, risks that are the normal,

frequent, or predictable consequences of doing business, and which business management can and

should control or manage.'" *Century Indem. Co. v. Golden Hills Home Builders, Inc.*, 561 S.E.2d 335,

358 (S.C. 2002) (quoting Roland H. Long, LL.M., *The Law of Liability Insurance*, § 3.06[1] (2001)).

Such "'policies do not insure [an insured's] work itself, but rather, they generally insure consequential

risks that stem from that work.'" *Id.*

"[F]aulty workmanship standing alone, resulting in damage only to the work product

itself, does not constitute an occurrence. *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d

33, 35 (S.C. 2005). The rationale behind this rule is that a CGL policy is not a performance bond. *Id.*

at 36. It is an insurance policy, which is intended to insure against accidents. *Id.* But if the faulty

workmanship causes damage to property other than the defective work product itself, there may be an

"occurrence" triggering coverage. *Newman*, 684 S.E.2d at 544-45.

Builders Mutual contends that the CGL policy in this case does not provide coverage

for most of the claims against the defendant in state court because the construction defects are a result

of faulty workmanship, and faulty workmanship standing alone does not constitute an occurrence. Also,

Builders Mutual contends that the policy's "your work" exclusion prohibits coverage.

Wingard Properties contends[5], on the other hand, that the policy provides coverage because the

faulty workmanship resulted in damage to other parts of the structure and thus there was an occurrence

---

[5] Gwynn has not filed a motion for summary judgment. However, the insured is Wingard.

under the policy provisions. It also contends that the "your work" exclusion and the CG 2294 endorsement do not eliminate coverage as a matter of law because a determination of whether damage occurred **during construction or afterwards** is a question of fact. Additionally, it contends that the declaratory judgment action is not ripe because damages have not yet been determined in the underlying action.

It appears to be undisputed that many of the punch list claims are not covered because they are contractual in nature and do not constitute an "occurrence" under the policy. However, Builders Mutual admits in its brief that there are some allegations that would support a finding of "resulting damage" which would constitute an occurrence[6]. Builders Mutual states:

> Builders Mutual asserts that the vast majority of the alleged property damage claims were not caused by an "occurrence" under current South Carolina precedent. . . The majority of the damages claimed by Gwynn are not covered because the damage is simply faulty workmanship consisting of improperly completed or incomplete work. This type of damage is not covered under any theory. As addressed below, **the punch lists may assert some minimal "resulting damage" to the residence as a result of the faulty workmanship. While such "resulting damage" may satisfy the requirements of the insuring agreement**, all such damage is subject to the "your work" exclusion as discussed in more detail below.

(Plaintiff's Memorandum in Support of Motion for Summary Judgment, Docket Entry #67, p. 7, emphasis added).

Therefore, it would appear that some occurrence could be present under the policy. The Court will next address the "your work" exclusion.

*"**Your Work Exclusion**.* As the *Auto-Owners* court noted, CGL policies typically contain a

---

[6] In *Auto Owners*, the South Carolina Supreme Court found that continuous moisture intrusion into the home was an occurrence under the initial grant of coverage under the CGL policy for the resulting property damage to the framing and exterior sheathing because it was "an unexpected happening or event" or "accident" involving "continuous or repeated exposure to substantially the same harmful conditions."

"your work" exclusion that precludes coverage for property damage to the insured's work or work done

on the insured's behalf and arising out of the insured's work or work done on the insured's behalf after

the work is completed. In the standard CGL policy form, like the one analyzed in *Auto-Owners*, the

"your work" exclusion includes a "subcontractor exception," which provides that the your work

"exclusion does not apply if the damaged work or the work out of which the damage arises was

performed on your behalf by a subcontractor." *See Auto Owners; see also French v. Assurance Co. of

Am.*, 448 F.3d 693, 700–01 (4th Cir. 2006) (discussing the history of the subcontractor exception and

noting ISO CGL policies have included the exception since the 1986 revision). In this case, however,

the Policy contains an endorsement, known as Endorsement CG 22 94 (10/01), that removes the

standard subcontractor exception from the "your work" exclusion. *See* Policy, page 31 of 80 of Policy

of Entry #67-5 (setting out the modified "your work" exclusion). The replacement exclusion removes

the "subcontractor's exception" discussed in *Auto-Owners* and *French*, leaving the "your work"

exclusion to exclude coverage for "'[p]roperty damage to "your work" arising out of it or any part of

it and included in the 'products-completed operations hazard.'" Builders Mutual argues that removal

of the subcontractor's exception requires a different analysis than that in *Auto-Owners* and that, without

the exception, no coverage is available because all work at issue is the work of the insured Wingard

Properties, regardless of whether it was performed by Wingard Properties or subcontractors.

    Although South Carolina state courts have not interpreted the CG 22 94 endorsement, the

Honorable Patrick Michael Duffy of this court recently considered a CGL policy that included the

endorsement. In *Builders Mutual Insurance Co. v. Kalman*, C/A No. 2:07-3609-PMD, 2009 WL

4807003 (D.S.C. Dec. 8, 2009), Judge Duffy held that a CGL policy including that endorsement

"removes the subcontractor's exception from the 'your work' exclusion[,]" and that "[w]ithout the

12

subcontractor's exception present in *Auto-Owners*, the property damage claimed by the [homeowners] in the Underlying Complaint falls within the 'your work' exclusion." *Id.* at * 5.

The Defendant mistakenly treats the Policy as being identical to the policy in *Auto-Owners*, which contained the subcontractor exception to the "your work" exclusion. However, the CG 22 94 endorsement removes the subcontractor exception to the "your work" exclusion, making the coverage purchased by Wingard Properties very different from that in *Auto-Owners*. As modified by Endorsement CG 22 94, the "your work" exclusion precludes coverage for the following: "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." To determine whether the exclusion precludes coverage, the court must consider whether the alleged property damage: (1) was damage to Wingard Properties' work; (2) "arose out of" Wingard Properties' work; and (3) was included in the "products-completed operation hazard."

Regarding question (1), the Policy defines "your work" as "[w]ork or operations performed by you [the Insured] or on your behalf." Policy, V.22.(a)(1). Builders Mutual's position is that "performed on your behalf" includes work performed on Wingard Properties' behalf by its subcontractors and that all damage claimed in the Underlying Action is damage to the home that Wingard Properties built through its subcontractors. Defendants presented no argument on this point. The Court agrees with Builders Mutual that the "your work" exclusion applies to work performed by an insured's subcontractors, as well as by the general contractor. The Policy's page on which Endorsement CG 22 94 is set out contains the following provisions:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – DAMAGE TO WORK PERFORMED BY

## SUBCONTRACTORS ON YOUR BEHALF

(Policy, CG 22 94, 10 01, emphasis in original, found as page 31 of 80 to Entry 67-5).

The "subcontractor exception" concerns work "performed on your [insured's] behalf by a

subcontractor." Standard ISO CGL 1986 Policy Form, Exclusion *l. Cf. Auto-Owners*,

684 S.E.2d at 545 (finding work performed by insured's subcontractors performed "on

behalf of" insured and covered because of subcontractor exception). All claimed damages—those for

faulty workmanship and defective construction as well as claims related to resulting damage—are

claims for damage to work performed by Wingard Properties itself or subcontractors on its behalf. The

entire home was Wingard Properties' work for purposes of the "your work" exclusion.

Next, the Court considers whether the alleged property damage "arise[s] out of" work by

Wingard Properties or its subcontractors. Again, Builders Mutual claims that it did, and Defendants

make no argument on the point. Although the Policy does not define "arising out of," the South

Carolina Supreme Court has interpreted that phrase in a general liability policy context and found it

means "caused by." *McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993) (holding

exclusionary clause in general liability policy, "arising out of" narrowly construed as "caused by.") As

discussed within, the Homeowners claim that all damage to their home was "caused by" work by

Wingard Properties or those working on its behalf. The undersigned agrees that all claimed damage

"arises out of" work by Wingard Properties or work performed on its behalf.

Finally, Builders Mutual asserts that the third factor—concerning whether damage

was included in the Policy's "products-completed operations hazard"—is not at issue because it

contends that all of the Homeowners' claimed damage occurred **after** Wingard Properties and its

subcontractors had finished work on the home. (Plaintiff's Memorandum in Support of Motion for

Summary Judgment, Docket Entry #67, p. 10.)  The defendant in its memorandum, however, asserts

14

that there are factual issues in the underlying action as to whether the damage occurred **during** construction as opposed to afterwards. Apparently, Defendant is contending that the work would not be included in the "products-completed operations hazard" because it contends the damage occurred **before** the work was completed. The plaintiff has not responded to this argument.

The South Carolina Court of Appeals construed a products-completed operations hazard provision in a CGL policy in *Laidlaw Environmental Services (TOC), Inc. v. Aetna Casualty & Surety Co.*, 338 S.C. 43, 524 S.E. 2d 847 (Ct. App. 1999). The policy in *Laidlaw* excluded property damage included in the products-completed operations hazard. The products-completed operations hazard was defined as including "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: . . . Work that has not yet been completed or abandoned." The court stated, "[b]y its plain meaning, products-completed operations coverage applies when the insured contractor completes work on a project. Accordingly, '[w]ork that has not yet been completed' is still in progress and not covered under the products-completed operations coverage." *Id.*, 524 S.E.2d at 850. Since it was "clear that the work had been been . . . completed . . . before the accident occurred", the property damage was excluded.

In the case at bar, the Court finds there is a question of fact as to **when** the damage occurred and that such issue should be resolved at trial in the underlying case in state court and not by this Court. *See e.g., Jessco, Inc. v. Builders Mutual Ins. Co.*, 2010 WL 419920 (D.S.C. 2010) and *Auto Owners* (Declaratory judgments after arbitration); *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 561 S.E. 2d 355 (2002) (Stipulation that moisture damage began occurring prior to the date

of the deed of the property to the homeowners).[7] This is also consistent with *Ellett*, in which the Fourth Circuit Court of Appeals applying South Carolina law states: "Because no findings of fact have been made in the (underlying lawsuits), the indemnity claim is not ripe. . . " 275 F.2d at 388. *See also*, *Berenyl, Inc. v. Lanmark American Ins. Co*., 2010 WL 233861 (D.S.C. January 14, 2010) at *10, "When findings of fact have not been made in the underlying lawsuit, the indemnity claim is not ripe. . . For example, at this point in the underlying action, there is still a question of fact as to what negligent acts, errors, or omissions alleged in the underlying Complaint occurred before and after the Retroactive Date."

### *Conclusion*

Defendant Wingard's Motion for Summary Judgment is granted in part in that the Court finds that the plaintiff has a duty to defend the underlying lawsuit. With regard to the ultimate duty to indemnify, or provide coverage, this Court dismisses that portion of this declaratory judgment action without prejudice. [8] The Motion for Relief from Mediation Deadline is DENIED as MOOT.

---

[7] In *Kalman*, there does not appear to have been an issue regarding whether the damage occurred **before or after** construction. Judge Duffy states: "In addition, the heavy water intrusion sustained as a result of faulty workmanship arose **after** Kalman and its subcontractors had finished their work meaning the Residence was included in the 'products-completed operations hazard' provison." 2009 WL 4807003, at *6 (D.S.C., December 8, 2009)(emphasis added). In *Builders Mutual Insurance Co. v. Wingard Properties, Inc. et al*, 2010 WL 3069513 (D.S.C. August 3, 2010), cited by Builders Mutual, this court adopted a Report and Recommendation by Magistrate Judge Hodges and granted the motion for summary judgment by Builders Mutual on the basis of the "your work" exclusion without objection by Wingard. However, Wingard did not make the argument in that case that the state court should determine whether the damage occurred before or after completion of construction.

[8] In the event Builder's Mutual re-files a declaratory judgment action, it should be sure that the damages in the underlying state court action are determined with enough specificity to allow the Court to determine and assess coverage.

**AND IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, S.C.
September 13, 2010